DENNIS TAYLOR vs. THE STATE.

1. CRIMINAL LAW: *Bigamy. Proof of marriage.*
Where, on a trial for bigamy, proof of the first marriage by the minister who solemnized the rites, and the marriage license with his certificate thereon,

is sufficient proof. It is not a valid objection that the minister was not properly ordained as a minister of the Gospel, according to the rules and regulations of his church.

2. SAME: *Identity of the first wife.*

Where, in bigamy, the first wife was known by two names, the question to be considered by the jury is the identity of the woman, and not her name, and it is proper for the court to so instruct the jury. It is the identity, and not the name, that is submitted to the jury.

3. SAME: *Marriage by consent.   Without ceremony.*

It is improper to charge the jury that " a marriage was good without any ceremony, and by the mere consent of the parties, if the parties intended marriage, and that intent sufficiently appears." It is deficient in not adding that such consent and intent must be followed up by actual cohabitation thereunder as man and wife.

4. SAME: *Juror.  Improper conduct.*

However improperly jurors may talk about a case in their deliberations upon it, and discuss things outside of the testimony, it would be erecting a standard too high, and would result in a defeat of justice, to set aside their verdict because they will do so.

5. SAME: *Instructions.  Pencil memorandum by mistake.   Case in judgment.*

The district attorney asked, and the court gave, a lengthy printed instruction to the jury, at the bottom of which the district attorney had written in pencil these words: "This is among a people of loose ways; try to elevate your race." *Held,* that if the testimony was in the least conflicting, or the guilt of the prisoner in any way left in doubt, the court should grant a new trial. But where it is impossible for the jury to have been misled by it, and the guilt of the accused established beyond all doubt, it is not sufficient for a reversal.

ERROR to the Circuit Court of *Colfax* County.

Hon. J. A. ORR, Judge.

The facts of the case necessary to a full understanding of the points decided are set out in the opinion of the court.

The errors assigned are:

1. Giving instructions for the state.

2. Refusing instructions asked by accused.

3. Refusing to grant a new trial.

*Flaniken & Beckett,* for plaintiff in error:

The 1st charge for the state is too broad. The indictment charges a former marriage with Maria Calvert and a second marriage with Ann Dawson. These allegations must be proved. 24 Miss., 569; 28 Miss., 637; 8 S. & M., 576. The jury should have acquitted under the indictment. 3 Wharton's Cr. L., §§ 2625, 2627; Ohio *v.* Moore, 3 West. L. Jour., 134.

---

---

The offense is regulated by statute.    Roscoe's Cr. Ev., p. 293 ;
1 Bish. Cr. L., § 502.    The first marriage must be valid.
Roscoe's Cr. Ev., pp. 294, 300 ; 3 Whart. Cr. L., § 2635.    In
prosecutions for bigamy the. actual marriage must be proven.
Bouvier's L. Dic., p. 110, § 16 ; p. 109, § 12.    The 6th
charge is too broad in criminal cases.    It is laid down in a
civil case, and is *obiter dicta*, in Dickerson *v.* Brown, 49 Miss.,
370.    Marriage will not be presumed in cases of bigamy as in
civil cases.    Roscoe's Cr. Ev., p. 294.

The court should have given the charges asked by the accused.
The state must prove two things :    1. The two marriages.    2.
The identity of the parties.    Roscoe's Cr. Ev.,  pp. 294, 305.
One of the jurors prejudiced the case.    31 Miss., 480 ; 3
How., 27.    See also Morris' State Cases, pp. 1051, 915, 674,
509, 476, 473, 430, 399, 392, 113, 107.

*G. E. Harris*, Attorney General, for the State :

The first charge defines the offense.    Rev. Code, ·1871, §
2505.    The regularity of the minister's ordination is imma-
terial.    49 Miss., 357 ; Const. Miss., art. 12, § 22.

The proof establishes a marriage binding in its effect, and
not dependent upon mere consent of the parties followed by
cohabitation, or upon any presumption of law.    Both the first
and second marriages are established, and the accused is guilty
beyond all possible doubt ; and I respectfully submit that there
is no error shown in the record.


CHALMERS, J., delivered the opinion of the court.

The plaintiff in error was convicted of the crime of bigamy.
The contest, as usual in such cases, was as to the proof of the
first marriage.    We think it was most conclusively established.
The minister who solemnized the rights testified to the fact·and
produced the marriage license ·with his certificate of the per-
formance of the ceremony indorsed thereon.

It is objected that, according to his own testimony, he was not
properly ordained, as was shown by the testimony·of another
minister of the same faith.

It is well settled that his open claim of being a. minister,

and the fact that he was generally understood and recognized and acted as such, is all that is necessary. Whart. Cr. L., § 2634, 713; Hays v. The People, 25 N. Y., 390.

The first wife was known by two names. She was styled in the marriage license Maria Draper. She was married as Maria Calvert, was usually so known, and was so named in the indictment. It was sufficiently proved that she was one and the same person. Nor was any injustice done defendant by the rulings of the court on this subject.

The jury were charged that "if the defendant married the first time any woman going by the name of Maria Calvert, who is shown to be now living, then the identity of said first woman need not be further shown than that she was the person actually married, be her name whatever it may."

The jury were thus correctly instructed that it was the identity of the person, and not the name, that was submitted to them. The jury were further charged that a marriage was good without any ceremony, and by the mere consent of the parties, if the parties intend marriage, and that intent sufficiently appears. This instruction is deficient in not adding that such consent and intent must be followed up by actual cohabitation thereunder as man and wife. The error was wholly immaterial in this case, however, as there was full proof both of a valid ceremony and actual cohabitation.

It was made ground for the motion for a new trial in the court below that one of the jurors, who had been the former master of the defendant, stated in the jury-room that he knew the accused had at least three wives. This was made to appear by the affidavit of a party to whom this juror told it after the conviction, stating at the same time that this statement by him to the jury had produced the conviction. However improper it may be for jurymen to discuss in their deliberations anything outside of the testimony, it would be erecting too high a standard, and would result in a defeat of justice, to set aside their verdicts because they will do so. The surmise of the juror in this case, that the fact stated by him had caused the conviction, could not of course be considered by the court.

A new trial was also asked because of some improper words written by the district attorney on one of his instructions.

It appears that the district attorney had a lot of printed instructions on the subject of reasonable doubts. One of these printed copies was given by the court to the jury. Its admirable statement of the doctrine tempts us here to set it out:

"The defendant is presumed to be innocent until he is proved to be guilty, and this presumption extends to the whole crime charged against him—innocent of the overt act, innocent of the felonious intent, innocent of the whole crime, and innocent of all its parts; and the guilt of the accused must be fully and conclusively established to a moral certainty. No preponderance of evidence, nor weight of preponderant evidence, is sufficient to warrant conviction unless it is so convincing as to generate full belief, to the exclusion of every reasonable doubt. But reasonable doubt is not vague conjecture, nor mere supposition or hypothesis, but it is such doubt as reasonably arises out of the testimony—a doubt for which a reason can be given.

"Mathematical or demonstrable certainty is not required. While the testimony should be equal to that which controls and decides the conduct of men in the highest and most important affairs of life, all that is required to enable a jury to return a verdict of guilty is, after a comparison and consideration of all the testimony, to believe conscientiously that it establishes the guilt of the defendant as charged."

At the bottom of this printed charge the district attorney had written in pencil these words: "This is among a people of loose ways; try to elevate your race." It is conceded that the printed copy upon which these words had been written was unintentionally given to the jury. The words were probably intended as affording the suggestion of a point to be elaborated in oral argument. It is insisted, however, that inasmuch as the accused was a colored man, and a number of his own race were on the jury, the words were liable to be mistaken by the jurors for a portion of the charge, and as constituting a judicial exhortation to convict the prisoner for the good of their

race. If we could believe that such a mistake could possibly have been made, or if the testimony was in the least conflicting, or the guilt of the prisoner in any way left in doubt, we should feel it our duty to give him a new trial. Deeming it impossible that the jury could have been misled, and the guilt being established beyond any room for question, we must decline to do so.

Judgment affirmed.